*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*


# OPINION

Nos. 04-08-00214-CR & 04-08-00215-CR
Robert Wade **GOKEY**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 175th Judicial District Court, Bexar County, Texas
Trial Court Nos. 2007-CR-0897 & 2007-CR-0898
Honorable Mary D. Roman, Judge Presiding

## RECONSIDERATION ON PETITION FOR DISCRETIONARY REVIEW

Opinion by:     Steven C. Hilbig, Justice

Sitting:        Catherine Stone, Chief Justice
                Phylis J. Speedlin, Justice
                Steven C. Hilbig, Justice

Delivered and Filed: March 3, 2010

AFFIRMED

Our opinion and judgment of December 23, 2009 are withdrawn and the following are

substituted. *See* Tex. R. App. P. 50.  Robert Wade Gokey was found guilty by a jury of two counts

of aggravated assault on a public servant and one count of evading arrest.  Punishment was tried to

the court.  The court found the habitual offender allegations in the indictments to be true and

sentenced Gokey to concurrent thirty year sentences.  On appeal, Gokey contends the evidence is

legally and factually insufficient to support a finding that he knew his victims were peace officers, that he caused serious bodily injury, or to support the jury's implicit rejection of his defense of involuntary act or conduct. Gokey also contends the evidence is legally insufficient to support the trial court's finding he had been convicted of one of the offenses alleged for enhancement. We affirm the judgment of the trial court.

## BACKGROUND

On November 8, 2006, several deputies from the Bexar County Sheriff's office were preparing to execute a search warrant on the east side of Bexar County. Part of the preparations included establishing surveillance on the house intended to be searched. During the surveillance, the deputies noticed a person, later identified as Gokey, leave the house and enter a car. According to Deputy Richard Escobedo, Gokey paused before entering the car and appeared to place something under the seat. Deputy Anthony Alvarado, who was leading the search warrant team, followed Gokey in his unmarked vehicle.

Deputy Armando Lopez, who was in full uniform and driving a marked patrol vehicle, participated in a rolling surveillance of Gokey. Deputy Lopez testified Gokey did not use his turn indicator to signal before making a turn. Deputy Lopez turned on his emergency lights and Gokey pulled his car to the side of the road. Deputy Lopez stopped his vehicle behind Gokey's car and approached the vehicle. Two unmarked sheriffs' vehicles with deputies dressed in plain clothes also parked near Gokey's car. Before Deputy Lopez reached Gokey's car, Gokey backed the car, jumped a curb, and drove around the other deputies' vehicles. Deputy Lopez got back into his vehicle, activated his siren, and began chasing Gokey. The two unmarked vehicles also pursued Gokey. The

chase continued at a high rate of speed and lasted for several miles until Gokey drove into a parking lot. Gokey jumped from his car while it was still moving and attempted to flee from the deputies.

Deputy Lopez testified he was the first to reach Gokey and that he grabbed Gokey by the hand. Gokey used his free hand to swing at Deputy Lopez's hand. Deputy Lopez felt a sharp pain on his left hand and released his grip on Gokey. Deputy Lopez noticed that his hand had been cut two-to-three inches deep and he could see bone exposed by the cut. Deputy Alvarado, who had also arrived at the parking lot, testified he was not in uniform, but had his badge either clipped to his holster or on a chain around his neck. He testified he saw Deputy Lopez grab Gokey. As Deputy Alvarado approached the men, he noticed Deputy Lopez had lost his hold on Gokey and was acting as if something was wrong. Deputy Alvarado told the jury he saw Gokey run into another deputy and push her away. Drawing his weapon, Deputy Alvarado continued to chase Gokey, screamed at him to stop, and identified himself by yelling "Sheriff's Department." As Deputy Alvarado got closer, Gokey reached back and swung his arm at Deputy Alvarado in a slashing motion. Deputy Alvarado testified he raised his arm to block the blow and felt a sharp scratch on his arm. The deputy later determined that Gokey had cut him on the arm. Deputy Alvarado managed to grab Gokey by the shoulder and throw him to the ground. While securing Gokey, Deputy Alvarado realized Gokey had a small red knife or box cutter in his hand. Gokey continued to swing the knife at Deputy Alvarado and the other deputies who arrived to help Deputy Alvarado subdue Gokey. Deputy Escobedo also testified he saw Gokey cut Deputy Lopez and that Gokey and the uniformed Deputy Lopez were facing each other when Gokey sliced the deputy's hand.

**STANDARD OF REVIEW**

We review a challenge to the legal sufficiency of the evidence by looking at all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Prible v. State*, 175 S.W.3d 724, 729-30 (Tex. Crim. App.), *cert. denied*, 546 U.S. 962 (2005). We resolve any inconsistencies in the testimony in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000). In reviewing the factual sufficiency of the evidence, we look at the evidence in a neutral light, and ask whether the evidence supporting the verdict is so weak or so against the great weight and preponderance of the evidence as to render the verdict manifestly unjust. *Grotti v. State*, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008).

**DISCUSSION**

***Aggravated Assault on a Peace Officer***

Gokey was charged with aggravated assault in a single indictment that contained two counts. Count one named Deputy Lopez as the victim and count two named Deputy Alvarado as the victim. Each count contained two paragraphs, with the first paragraph alleging Gokey used a deadly weapon — a knife — to cause bodily injury to the victim. The second paragraph alleged Gokey caused serious bodily injury to the victim. Each paragraph also alleged Gokey knew the victim was a public servant who was lawfully discharging an official duty when he was assaulted. This allegation raised the aggravated assault charge, generally a second degree felony, to a first degree felony. TEX. PENAL CODE ANN. § 22.01(b)(2)(Vernon 2007). Section 22.02 of the Texas Penal Code provides that a defendant "is presumed to have known the person assaulted was a public servant . . . if the person

-4-

was wearing a distinctive uniform or badge indicating the person's employment as a public servant . . . ." *Id.* § 22.02(c). The jury was instructed in accordance with this presumption.

Gokey argues the evidence was legally and factually insufficient to support the convictions for aggravated assault because he did not know his victims were peace officers. Deputy Lopez testified that on the day of the offense, he was in full uniform and driving a marked patrol vehicle. Deputy Alvarado testified his badge was displayed during the foot chase, either on his holster or on a chain around his neck. The section 22.02(c) presumption therefore applies. *See id.* The evidence on this element of aggravated assault is sufficient to support the convictions.

Moreover, the evidence is sufficient even if the jury did not rely on the presumption. Deputy Alvarado was not cut until Gokey ran from deputies after the car chase had ended. Before the chase, Gokey stopped his car in response to flashing emergency lights on Deputy Lopez's marked police vehicle. Two other deputies in unmarked sheriffs' vehicles who were involved in the rolling surveillance parked near Gokey's car. Gokey maneuvered around the unmarked vehicles and fled. Deputy Lopez and the two other deputies returned to their vehicles and began chasing Gokey. During the chase, Deputy Lopez used his siren and loudspeaker in an attempt to have Gokey stop. After Gokey pulled into the parking lot and jumped out of his car, the first person he encountered was the uniformed Deputy Lopez, who attempted to detain Gokey. Deputy Lopez testified his vehicle was immediately behind Gokey's vehicle as Gokey attempted to flee. Deputy Lopez also told the jury Gokey faced him as Gokey exited his vehicle. Deputy Lopez quickly reached Gokey and was cut when he attempted to stop Gokey. Gokey pushed another deputy in plain clothes as he tried to run away. Deputy Alvarado caught Gokey and was cut by him.

Gokey contends that although there is evidence he faced Deputy Lopez as Gokey exited his vehicle, there is no evidence Gokey actually **saw** Deputy Lopez. This argument fails to acknowledge that the jury is permitted to make reasonable inferences from the evidence. *Hooper v. State*, 214 S.W.3d 9, 14-15 (Tex. Crim. App. 2007). The jury was permitted to infer that if Gokey and Deputy Lopez faced each other just before Gokey cut the deputy, Gokey was aware that Deputy Lopez wore a distinctive uniform indicating he was a public servant.

A rational jury could have found from this evidence that Gokey knew he was being pursued by law enforcement officers and that the people he cut were officers who were attempting to subdue him. We hold the evidence is both legally and factually sufficient to establish Gokey knew Deputies Lopez and Alvarado were public servants.

Lastly, Gokey asserts the evidence is legally and factually insufficient to show the deputies suffered serious bodily injury as alleged in the second paragraph of each count. The charge of the court instructed the jury it could return a finding of guilty if the jury found beyond a reasonable doubt Gokey used a deadly weapon and caused bodily injury to each victim, or if it found Gokey caused serious bodily injury to the victims. The jury was also instructed to answer a special issue as to whether Gokey used or exhibited a deadly weapon during the commission of the aggravated assaults or in the immediate flight therefrom. The jury returned a general verdict of guilty on each count and an affirmative finding that Gokey used or exhibited a deadly weapon. Gokey does not attack the sufficiency of the evidence to support the jury's finding that he used a deadly weapon.

Where alternate theories of committing the same offense are submitted to the jury in the disjunctive, it is proper for the jury to return a general verdict if the evidence is sufficient to support a finding under any theory submitted. *Sorto v. State*, 173 S.W.3d 469, 472 (Tex. Crim. App. 2005)

*cert. denied*, 548 U.S. 926 (2006); *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991). Allegations that a defendant, with the appropriate *mens rea* either caused bodily injury and used a deadly weapon or caused serious bodily injury state two different manners in which the crime of aggravated assault may be committed. *Landrian v. State*, 268 S.W.3d 532, 538-39 (Tex. Crim. App. 2008). We decline to conduct a review of the sufficiency of the evidence as to the existence of serious bodily injury because Gokey does not claim the evidence is insufficient to support his conviction under the bodily injury/deadly weapon theory. *See Gonzalez Soto v. State*, 267 S.W.3d 327, 333 (Tex. App.—Corpus Christi-Edinburg 2008, no pet.) (appellate court declined to render judgment of acquittal after State conceded evidence was legally insufficient to support one of three theories submitted to jury because jury returned general verdict of guilty and defendant did not challenge sufficiency of evidence as to remaining two theories); *Randall v. State*, 232 S.W.3d 285, 288 (Tex. App.—Beaumont 2007, pet. ref'd.)(overruling defendant's claim of legal insufficiency because defendant did not challenge all theories submitted to jury); *Henderson v. State*, 77 S.W.3d 321, 327 (Tex. App.—Fort Worth 2002, no pet.) (same). We therefore overrule Gokey's points of error concerning the legal and factual sufficiency of the evidence.

### *Involuntary Act or Conduct Defense*

In his next two points of error, Gokey argues the evidence is legally and factually insufficient to support the jury's implicit rejection of his involuntary act or conduct defense. At Gokey's request, the jury was instructed to find him not guilty if the cutting of each victim was the result of an involuntary act or conduct while Gokey was attempting to cut himself. Gokey contends he was attempting to commit suicide when the deputies were cut and the cutting was "involuntary."

A person commits an offense only if he voluntarily engages in the conduct proscribed by law. TEX. PENAL CODE ANN. § 6.01(a) (Vernon 2007). Involuntary conduct is a defense to prosecution. *Trujillo v. State*, 227 S.W.3d 164, 169 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). "Voluntariness," as used in section 6.01(a):

> refers only to one's own physical body movements. If those physical movements are the nonvolitional result of someone else's act, are set in motion by some independent non-human force, are caused by a physical reflex or convulsion, or are the product of unconsciousness, hypnosis or other nonvolitional impetus, that movement is not voluntary.

*Rogers v. State*, 105 S.W.3d 630, 638-639 (Tex. Crim. App. 2003)(footnotes omitted). "'[C]onduct [is not] rendered involuntary merely because an accused does not intend the result of his conduct.'" *Id.* at 638 (quoting *Adanandus v. State*, 866 S.W.2d 210, 230 (Tex. Crim. App. 1993) *cert. denied*, 510 U.S. 1215 (1994)).

When a defendant challenges the legal sufficiency of evidence to support the jury's rejection of a defense, the standard of review is altered slightly. In addition to deciding whether a rational jury would have found the essential elements of aggravated assault against a peace officer beyond a reasonable doubt, we must also decide whether the same jury would have found against Gokey on the involuntary act or conduct issue beyond a reasonable doubt. *See Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). When reviewing the factual sufficiency of the rejection of a defense, we view "all of the evidence in a neutral light and ask[] whether the State's evidence taken alone is too weak to support the finding and whether the proof of guilt, although adequate if taken alone, is against the great weight and preponderance of the evidence." *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003).

Gokey argues he was attempting suicide when the officers "got in the way" and he "involuntarily" cut them. Although several witnesses testified Gokey used the knife to cut his neck as the officers tried to subdue him, Gokey has not identified any evidence that suggests his actions were the result of some reflex, convulsion, unconsciousness, hypnosis, or other nonvolitional impetus. Rather, his argument is that the result of his actions – the cutting of each officer – was unintended. This argument is akin to the "accident" defense no longer available under Texas law. *See Williams v. State*, 630 S.W.2d 640, 644 (Tex. Crim. App. 1982)(noting that under former penal code, "accident" described multiple defenses, including involuntary conduct and unintended result). "Accident," in the sense of an unintended or unexpected result of conduct, no longer supports the defense of involuntariness. *See Rogers*, 105 S.W.3d at 638-39. Rather, the evidence must show "one's own physical body movements" were not voluntary. *Id.* at 638.

There is no evidence Gokey did not voluntarily swing the knife. Deputy Alvarado testified Gokey was swinging the knife at the deputies in an attempt to keep them away from him. Deputy Escobedo testified Gokey "purposefully" swung the knife. There is no evidence indicating Gokey's actions were anything but voluntary. The evidence is therefore legally and factually sufficient to support the jury's implicit rejection of Gokey's involuntary act or conduct defense.

### *Enhancement Allegations*

In his final two points of error, Gokey asserts the evidence is legally insufficient to support the trial court's finding of true to the enhancement allegations because there is a material variance between the allegations and the proof. The State agrees the enhancement allegations recite a conviction in Chesterfield County, Virginia and the proof establishes a conviction in the Circuit Court in the City of Colonial Heights, Virginia. We must therefore decide whether variance between

what was alleged and what was proved is material. *See Human v. State*, 749 S.W.2d 832, 836 (Tex. Crim. App. 1988) (holding variance between enhancement allegation and proof renders evidence legally insufficient only if variance is material).

Prior convictions alleged for enhancement are not required to be pleaded with the same particularity as the primary offense. *Freda v. State*, 704 S.W.2d 41, 42 (Tex. Crim. App. 1986). A variance between an allegation in an enhancement paragraph and the proof introduced at trial is material only if it would mislead a defendant to his prejudice. *Id.* at 42. Unless Gokey was prejudiced by the discrepancy in allegations and the proof, the variance does not require reversal. *See id.* at 42-43 (variance in name of the prior offense alleged and name of prior offense proved not material where date, cause number, and court were correctly alleged); *Rooks v. State*, 576 S.W.2d 615, 617 (Tex. Crim. App. 1978) (where indictment alleged prior conviction in "Criminal District Court of Harris County" and proof showed conviction in the "184th District Court of Harris County," variance held not material).

The indictments allege that on March 26, 1979, in Cause No. 202, in Chesterfield County, Virginia, Gokey was convicted of the felony of statutory burglary. The proof was that on March 26, 1979, in Cause No. 202, in the Circuit Court of the City of Colonial Heights, Virginia, Gokey was convicted of the felony of statutory burglary. The only statement in Gokey's brief regarding prejudice is that "listing the wrong place of conviction would prevent a defendant from accessing the record." However, Gokey has not asserted he was not given sufficient notice of what the State intended to prove, that he was surprised, that he was unable to access the record, or that he was misled to his prejudice by the discrepancy between the State's allegations and its proof. Because

Gokey has not shown he was prejudiced, the variance was not material and the evidence is legally sufficient to support the judgment.

The judgments of the trial court are affirmed.


Steven C. Hilbig, Justice


Publish