

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-19-00306-CR
_____

JEREMY MOOR, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 364th District Court
Lubbock County, Texas
Trial Court No. 2019-417,171, Honorable William R. Eichman II, Presiding

April 29, 2020

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and DOSS, JJ.

Appellant, Jeremy Moor, was convicted of aggravated assault of a public servant[1] and received an enhanced sentence of confinement for life.  In a single issue, he contends that the State's evidence at trial was insufficient to convict.  We affirm.

---

[1] See Tex. Penal Code Ann. § 22.02(b)(2)(B) (West 2019).

## Background

The State's evidence at trial established that Appellant was enrolled in a Salvation Army program that provided him with living quarters. The night of October 12, 2013, he was not allowed to enter his living quarters after admitting to drinking and refusing to take a Breathalyzer. Laura Trevino, a Salvation Army employee, called police when she became suspicious that Appellant was carrying a firearm. She called Lucinda Olivares, another Salvation Army employee, to express her concerns. Olivares observed Appellant and also grew suspicious that he was carrying a firearm. She called 911 and was told a call had already been placed. Oliveres returned to observing Appellant sitting in the front passenger seat of a pickup owned by Juan Florez.[2]

While Appellant was in the pickup, Appellant pressed a black, semiautomatic handgun into Florez's side. Appellant was described as edgy, tense, and smelled of alcohol. Appellant told Florez that he wanted to die.

One or more marked police cruiser began to arrive at the Salvation Army. Florez recognized at least one approaching police car from his vantage point inside the pickup, as did Oliveras, who stood in front of the pickup. As the police cruiser passed, Appellant told Florez he was "going to shoot it out with the police."

Officer Timothy Varner drove past Florez's pickup on the left side before continuing down the street and pulling into a parking lot. After parking, Officer Varner walked down the street, shining his flashlight in parked cars. Florez's pickup caught his attention

---

[2] Florez was also in the Transitional Living Program.

because Florez and Appellant were the only ones sitting in the vehicle and were not moving.

As Officer Varner walked toward Florez's pickup, he stopped, focused his flashlight on the pickup, and instructed its occupants to "step out of the truck." Florez, having learned of Appellant's announced intention to "shoot it out with the police," jumped out of the pickup and laid in the parking lot behind one of the pickup's tires.

Appellant stepped out of the passenger-side door, assumed a shooting stance, and opened fire on Officer Varner. Officer Varner returned fire on Appellant and took cover behind the pickup. Officer Varner suffered gunshot wounds in his left leg, left shoulder, and left hip. Eight spent shell casings from Appellant's gun were recovered at the scene; the handgun's magazine was empty.

Officer Varner was subsequently treated for four gunshot wounds at the hospital— his thigh, his left hip (entry and exit wounds), and his left shoulder. The hospital records confirm he was shot at close range. He spent three days in the hospital and several months recovering from his injuries.

Standard of Review

The only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense the State is required to prove beyond a reasonable doubt is the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). *See Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). We consider all the evidence in the light most favorable to the verdict and

3

determine whether, based on that evidence and reasonable inferences therefrom, any rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).

We give deference to the responsibility of jurors to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jenkins v. State*, 493 S.W.3d 83, 599 (Tex. Crim. App. 2016). Each fact need not point directly and independently to the appellant's guilt, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Id.*

Furthermore, in conducting our analysis, we compare the elements of the offense as defined by a hypothetically correct jury charge to the evidence adduced at trial. *Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). In our review, we must evaluate all of the evidence in the record, both direct and circumstantial and whether properly or improperly admitted. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). When the record supports conflicting inferences, we presume the jury resolved the conflicts in favor of their verdict and defer to that determination. *Jackson*, 443 U.S. at 326.

Applicable Law

On appeal, Appellant challenges the sufficiency of the evidence supporting the jury's finding that Appellant knew Officer Varner was a public servant at the time he opened fire. He does not challenge whether there was sufficient evidence underlying any other element of the offense.

To convict a person of the offense of aggravated assault of a public servant, the State is required to prove beyond a reasonable doubt that an aggravated assault was committed "against a person *the actor knows is a public servant* while the public servant is lawfully discharging an official duty, or in retaliation or on account of an exercise of official power or performance of an official duty as a public servant." TEX. PENAL CODE ANN. § 22.02(b)(2)(B) (West 2019) (emphasis added). The actor is presumed to have known the person assaulted was a public person "if the person was wearing a distinctive uniform or badge indicating the person's employment as a public servant." TEX. PENAL CODE ANN. § 22.02(c) (West 2019). A municipal officer, dressed as Officer Varner was dressed the night of the shooting, is identifiable as a public servant within the meaning of the Texas Penal Code. *See Griffis v. State*, 441 S.W.3d 599, 604 (Tex. App.—San Antonio 2014, pet. ref'd); *McCoy v. State*, 932 S.W.2d 720, 723 (Tex. App.—Fort Worth 1996, writ ref'd).

Analysis

Appellant's contention that he did not know Officer Varner was a public servant when he fired his handgun relies primarily on challenging the witnesses' personal observations from the crime scene, arguing that it was dark, Appellant was agitated, and Officer Varner did not announce he was a police officer when he asked Appellant to come out of the pickup.[3] The evidence at trial, however, shows that both Olivares and Florez

---

[3] Appellant also asserts that he suffered from paranoid delusions. However, there was no evidence at trial to overcome the presumption that he was sane. *See Ruffin v. State*, 270 S.W.3d 586, 591-92 (Tex. Crim. App. 2008) (noting that Texas law presumes that a criminal defendant is sane and that he intends the natural consequences of his acts). The testimony at trial indicated Appellant was agitated, edgy, tense, and smelled of alcohol prior to the shooting. Appellant did not assert either an insanity or intoxication defense.

shared a similar viewing distance as Appellant, and that they both were able to identify Officer Varner as a police officer. The proximity in time between Appellant's statements about "shoot[ing] it out with the police" and the passing police cruiser further evidences Appellant's expectation that police were arriving on the scene; such expectations were confirmed when Officer Varner thereafter used the familiar method of pausing while shining his flashlight in the pickup and giving the men the order to "step outside the truck." Appellant made good on his threat: he stepped out of the pickup, assumed a shooter's stance, and took aim at Officer Varner, hitting him at least twice before pausing and shooting him a third time. Appellant then continued firing after Officer Varner returned fire.

Considering the evidence at trial, the jury could reasonably have inferred that Appellant identified Varner as a police officer at the time he opened fire and continued firing his weapon. We find this is sufficient evidence which when combined with reasonable inferences therefrom, the jury was rationally justified in finding Appellant guilty beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. *See, e.g., Partida v. State*, 279 S.W.3d 801, 803 (Tex. App.—Amarillo 2007, pet. ref'd); *Gokey v. State*, 314 S.W.3d 63, 67 (Tex. App.—San Antonio 2010, pet. dism'd); *Navarro v. State*, No. 07-06-0224-CR, 2007 Tex. App. LEXIS 8329, at *9 (Tex. App.—Amarillo Oct. 19, 2007, no pet.) (mem. op.; not designated for publication); *Sherber v. State*, No. 09-10-00367-CR, 2011 Tex. App. LEXIS 7648, at *11-12 (Tex. App.—Beaumont Sept. 21, 2011, no pet.) (mem. op.; not designated for publication).

In opposition to the jury's finding on this element of the State's case, Appellant offers no more than counter inferences that could have been drawn from the evidence,

6

questions the weight to be given certain testimony, and also questions whether some witnesses were reliable or credible.  These matters are left to the jury to decide and the verdict reflects their decision.  We will not disturb their verdict.  *Jackson*, 443 U.S. at 326.  See *Jenkins*, 493 S.W.3d at 599.  Appellant's single issue is overruled.

Conclusion

Having overruled Appellant's single issue, we affirm the judgment of the trial court.


Lawrence M. Doss
Justice


Do not publish.